■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES LINDSEY, Appellant. [859 NYS2d 486]—

Appeal by defendant from a judgment of the Supreme Court, Kings County (Chun, J.), rendered July 18, 2005, convicting him of assault in the second degree (two counts), assault in the third degree (two counts), and resisting arrest, upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the facts, by vacating the convictions of assault in the second degree (two counts) and resisting arrest, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed.

On the day of the defendant's arrest, an anti-crime unit consisting of six police officers arrived in two cars at a residential building owned by the New York City Housing Authority to conduct a routine patrol of the building. Three officers entered through the rear entrance while the other three entered through the front door. According to Police Officer Ted Wendling, who was the first officer through the rear door, while he was proceeding through a long, narrow hallway leading to the lobby, he observed the defendant throw a bag of narcotics into an elevator and then enter the elevator. Officer Wendling testified that, after struggling to prevent the defendant from closing the doors, he guided the defendant to another officer, recovered a bag of narcotics from the elevator, and advised the other officers that the defendant should be placed under arrest. Although one of the officers testified that the defendant was initially cooperative, the defendant did not succumb to the arrest. He shouted "you're not going to pin that on me . . . I'm not going back to jail," began flailing his arms, and charged toward the front door. In the ensuing struggle, two police officers were injured. None of the officers other than Officer Wendling observed the defendant throw a bag of narcotics and only one of the other officers testified that he saw the struggle over the closing of the elevator doors.

The defendant was convicted of two counts of assault in the second degree, one count of resisting arrest, and two counts of assault in the third degree. He was acquitted of criminal possession of narcotics in the seventh degree.

Contrary to the defendant's contention, the police officers' testimony and the other evidence presented by the People, when viewed in the light most favorable to the prosecution, established a valid line of reasoning and permissible inferences which could lead a rational person to the conclusions that the defendant's arrest was lawful (see People v Williams, 84 NY2d 925, 926

[1994]; *People v Matienzo,* 81 NY2d 778, 780 [1993]; *People v Hibbert,* 27 AD3d 662, 663 [2006]), and that his conduct was reckless, and was the cause of the police officers' injuries (*see* Penal Law § 15.05; *People v Stewart,* 40 NY2d 692, 696-697 [1976]; *Matter of Derek C.,* 44 AD3d 346 [2007]; *People v Krotoszynski,* 43 AD3d 450, 452 [2007]; *People v Griffin,* 300 AD2d 743, 744 [2002]; *People v Morrow,* 261 AD2d 279, 280 [1999]; *see also People v Pierce,* 201 AD2d 677, 678 [1994]). Moreover, contrary to the defendant's contention, Officer Wendling's testimony was not incredible as a matter of law (*see People v Calabria,* 3 NY3d 80, 82 [2004]; *People v Wilson,* 50 AD3d 711 [2008]). Accordingly, the evidence was legally sufficient to support the convictions (*see* Penal Law §§ 120.00, 120.05 [3]; *People v Williams,* 84 NY2d at 926).

However, upon the exercise of our factual review power (*see* CPL 470.15 [5]), we find the defendant's convictions of assault in the second degree and resisting arrest to be against the weight of the evidence. "To sustain a conviction of assault in the second degree under Penal Law § 120.05 (3), the People must establish that the injured police officer was engaged in a lawful duty at the time of the assault by the defendant" (*People v Sawyer,* 270 AD2d 293, 294 [2000]; *see* Penal Law § 120.05 [3]; *People v Greene,* 221 AD2d 559, 560 [1995]; *People v Voliton,* 190 AD2d 764, 766 [1993], *affd* 83 NY2d 192 [1994]). Similarly, "[a] defendant may not be convicted of resisting arrest . . . unless it is established that the police were engaged in 'authorized' conduct" (*People v Greene,* 221 AD2d at 560; *see* Penal Law § 205.30; *People v Jensen,* 86 NY2d 248, 253 [1995]; *People v Peacock,* 68 NY2d 675, 677 [1986]; *Matter of Kara M.,* 242 AD2d 630, 631 [1997]).

Here, probable cause for the defendant's arrest was predicated almost entirely upon Officer Wendling's testimony that he saw a bag of narcotics actually leave the defendant's hand as the defendant tossed it into an elevator. The jury's acquittal of the defendant on the drug possession charge indicates that it did not find that testimony to be credible. Resolution of issues of credibility is primarily a matter to be determined by the jury, which saw and heard the witnesses, and its determination should be accorded great deference on appeal (*see People v Romero,* 7 NY3d 633, 644-645 [2006]; *People v Mateo,* 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]). The jury's credibility determination was supported by the record.

Proceeding from this premise, based upon all the credible evidence, it would not have been unreasonable for the jury to find that the "lawful duty" element of the assault in the second

degree charge and the "authorized arrest" element of the resisting arrest charge were not established beyond a reasonable doubt. Accordingly, this Court must, "like the trier of fact . . . weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Romero,* 7 NY3d at 643 [internal quotation marks and citation omitted]). Left only with the physical evidence of the narcotics and the defendant's presence in the building, we find that the jury failed to give its credibility finding the weight it was due with respect to the assault in the second degree and resisting arrest charges. Accordingly, the verdict of guilt on those counts was against the weight of the evidence, and we set aside the verdict as to those charges (*id.* at 643-644).

With respect to the assault in the third degree charges, however, we are satisfied that the verdict of guilt was not against the weight of the evidence (*id.* at 633).

The defendant was not deprived of his statutory right to a speedy trial (*see* CPL 30.30 [1] [a]). The court properly excluded from the time chargeable to the People the period from October 18, 2003 through December 18, 2003, during which a principal prosecution witness was medically disabled due to the injuries he sustained in connection with the incident at issue, which rendered him unable to work or perform his ordinary daily activities (*see* CPL 30.30 [4] [g] [i]; *see People v Goodman,* 41 NY2d 888, 889-890 [1977]; *People v McLeod,* 281 AD2d 325, 327 [2001]; *People v Brown,* 232 AD2d 575, 576 [1996]; *People v Lee,* 217 AD2d 637, 638 [1995]; *People v Celestino,* 201 AD2d 91, 95 [1994]; *People v Johnson,* 191 AD2d 709, 710 [1993]). Further, the People could not properly be charged with the delay between their operative pre-arraignment declaration of readiness on May 27, 2004 and the defendant's scheduled arraignment on July 6, 2004 because "[r]esponsibility for scheduling an arraignment date . . . lies with the court" (*People v Carter,* 91 NY2d 795, 799 [1998]; *see People v Goss,* 87 NY2d 792, 797 [1996]). Since no further delays are claimed to be attributable to the People, the delay chargeable to the People, a total of 161 days, did not exceed the statutory time limit of 183 days.

The defendant's remaining contentions either are without merit or need not be reached in light of our determination. Lifson, J.P., Florio, Carni and Belen, JJ., concur.